# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 14, 2012

## STATE OF TENNESSEE v. NICHOLAS LARSEN

**Appeal from the Criminal Court for Shelby County**
**No. 09-07640     Lee V. Coffee, Judge**

---

**No. W2011-00976-CCA-R3-CD  - Filed January 9, 2013**

---

The Defendant-Appellant, Nicholas Larsen, entered a guilty plea to driving under the influence of an intoxicant (DUI), a Class A misdemeanor, after the trial court denied his motion to dismiss the indictment.  Larsen's guilty plea hearing indicated that he attempted to reserve a certified question of law on appeal pursuant to Tennessee Rule of Criminal Procedure 37 at the time he entered his guilty plea.  Following the dismissal of his appeal on the basis that the appellate record contained no attachment or corrective order setting out a certified question of law, Larsen filed a petition to rehear, arguing that the attachment containing the certified question referenced on the judgment form "became detached from the judgment sheet before the record was prepared and transmitted."  This Court subsequently granted Larsen's petition to rehear and motion to supplement the appellate record with this attachment and vacated its previous order dismissing the appeal.  Larsen timely supplemented the appellate record with the missing attachment, which stated the following certified question of law: "[W]hether the Court erred in denying the Defendant's Motion to Dismiss based on the fact that his pre-trial detention was not for a valid remedial purpose but rather was punitive."  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Blake D. Ballin, Memphis, Tennessee, for the Defendant-Appellant, Nicholas Larsen.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Susan L. Taylor, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On March 15, 2009, Larsen was issued misdemeanor citations for DUI and reckless driving before being transported to a hospital for treatment of his injuries resulting from an accident. Larsen reported to the jail for booking and processing on March 30, 2009, and reported to general sessions court for his arraignment on April 13, 2009. Following his arraignment, Larsen appeared in court on May 15, 2009, and his case was reset to July 13, 2009. On July 13, 2009, Larsen again appeared before the general sessions court, where he was taken into custody and his bond immediately set at $1000, an amount consistent with that court's policy regarding the minimum bond amount in all DUI cases. Larsen's case was subsequently bound over to the grand jury, who issued an indictment charging him with DUI, DUI with a blood alcohol concentration of eight-hundredths of one percent (.08%) or more, and reckless driving.

On April 19, 2010, Larsen filed a motion to dismiss the indictment, alleging that the time he spent in custody prior to posting the $1000 bond violated his double jeopardy protections because the purpose of the detention was punitive rather than remedial. He also alleged that the Shelby County General Sessions Court's policy of requiring a minimum $1000 bond in all DUI cases was unconstitutional pursuant to article I, section 16 of the Tennessee Constitution and conflicted with the Release from Custody and Bail Reform Act of 1978, as stated in Tennessee Code Annotated sections 40-11-101 to -144.

At the February 25, 2011 hearing on the motion to dismiss the indictment, the defense informed the court that the parties had stipulated to the following:

> That on March 16th, 2009, [Larsen] was issued . . . misdemeanor citation[s] charging him with driving under the influence and [reckless driving]. At his third court appearance on July 13, 2009, [Larsen] was taken into custody; bail of $1000 was set by [the general sessions judge in] Division IX.

The parties further stipulated that there was "[a] judicial policy, a copy of which is attached to the stipulation, requiring a minimum bond of $1,000 on all driving-under-the-influence cases [and that this judicial policy] was in place at that time." The State clarified that it only stipulated to "the fact that there was a policy in place, and whether or not [the general session judge] was adhering to that policy [or setting a bond on its own terms], the state couldn't say." A copy of the memorandum establishing a minimum $1000 bond in all DUI cases, which was signed by the Shelby County General Sessions Criminal Court judges, with an attached copy of the Order on Bond Setting, was admitted as an exhibit. The aforementioned memorandum stated the following:

> To:     Shelby County Judicial Commissioners
>          Shelby County Pretrial Services
>          Harvey Henderson, Administrator

General Sessions Criminal Court Clerk's Office

From: General Sessions Criminal Court Judges

Date: February 7, 2008

**Re:    Bonds-Driving Under the Influence of an Intoxicant (DUI)**

Effective as of Monday, February 11, 2008, all minimum DUI bonds are to be set at $1,000.00 (one thousand dollars). Also, effective as of the same date the attached form is to be used and filed in the court jackets of each DUI case at the time of the bond is set[.]

Please address any concerns to Judge Lambert Ryan, the Administrative Judge for the General Sessions Criminal Court.

The "attached form" referenced in the memorandum was the Order on Bond Setting, which had empty blanks for "the Judicial Commissioner" to insert the following information about the defendant for whom bond was to be set: (1) the length of time the defendant had resided in Shelby County; (2) whether the defendant was currently employed; (3) the defendant's family ties and relationships; (4) the defendant's prior felony convictions; (5) the defendant's prior failures to appear in court; (6) the defendant's prior failures to appear for booking/processing; (7) the defendant's prior misdemeanor convictions; (8) whether the defendant was currently on probation or parole or was currently out of confinement on bail or release; and (9) any other relevant factors. The form also included the following sentence: "The Judicial Commissioner has determined that the bail necessary to reasonably assure the appearance of the defendant while at the same time protecting the safety of the public should be set in the amount of _____." In addition, the form had a section for special bail conditions. Finally, the form had a space for the date and a line for the Judicial Commissioner's signature.

During the hearing on the motion to dismiss the indictment, Larsen was the only witness to offer proof. Larsen testified that on July 13, 2009, he was taken into custody and that his bond of $1000 was set by the general sessions judge without a hearing. He stated that the judge never asked him about his employment, his family ties and relationships, his criminal record, or how long he had resided in Shelby County prior to setting his bond. On cross-examination, Larsen stated that he was incarcerated for twenty-four hours prior to posting his bond.

At the conclusion of the hearing, the trial court found that the Shelby County General Sessions Court's policy establishing a minimum $1000 bond in all DUI cases was not

"clearly unconstitutional." In addition, the court found that "the procedure in which a defendant is required to post a bond after he is released on a citation when he's arrested for a charge of DUI . . . is not punishment under the Tennessee Constitution, not punishment under Tennessee case law." In denying the motion to dismiss, the trial court held that the fact that Larsen was required to post a $1000 bond after previously being released on a misdemeanor citation did not violate double jeopardy protections and was "not a bar to prosecution."[1]

On April 19, 2011, Larsen filed a petition to waive a jury trial and to enter a conditional plea of guilty pursuant to a plea agreement with the State while reserving a certified question of law on appeal. The parties stipulated to the following facts regarding Larsen's offense at the guilty plea hearing:

> That on March 15th, 2009, officers received a call from Rock Cuba (phonetic) . . . regarding an accident with injuries.
>
> [Larsen] was found to be the driver of one vehicle and the only person on the scene with head injuries.
>
> He had a strong odor of alcohol coming from his person; he was unsteady on his feet.
>
> [He had s]low and slurred speech[.]
>
> Red[,] blood-shot eyes.
>
> He admitted to drinking beer.
>
> He was issued this citation.
>
> An ambulance did come and transported [Larsen] to the [Regional Medical Center at Memphis] in stable condition.
>
> A whiskey unit made the scene at the [hospital,] and [Larsen] consented to [having his] blood draw[n]. . . .
>
> All of these events did occur here in Shelby County, Tennessee.

---

[1]The appellate record contains no written order denying Larsen's motion to dismiss.

Larsen was issued a misdemeanor citation because he suffered injuries the night of the incident that required hospitalization. See T.C.A. § 40-7-118(b)(2)(A) (allowing an officer to issue a citation for driving under the influence of an intoxicant where the offender is admitted to a hospital or is detained for medical treatment for a period of at least three hours for injuries received in a driving under the influence incident).

At the conclusion of the hearing, the trial court accepted Larsen's conditional guilty plea to DUI. The judgment form for this conviction contained the following language in the Special Conditions section: "See attachment to this judgment sheet regarding Certified Question [Driver's License] revoked 1 year." The judgment form also indicated that the court entered a nolle prosequi without court costs for counts two and three of the indictment. On April 20, 2011, Larsen filed a timely notice of appeal. As we previously noted, the appellate record was later supplemented with the attachment containing the following certified question of law: "[W]hether the Court erred in denying the Defendant's Motion to Dismiss based on the fact that his pre-trial detention was not for a valid remedial purpose but rather was punitive."

## ANALYSIS

Compared to the statement of his certified question of law, Larsen presents a different and more expansive issue in his appellate brief: "Whether prosecution is barred by Double Jeopardy if Defendant was detained under pro forma policy of the General Sessions Criminal Court of Shelby County while out on misdemeanor citation in lieu of continued custody." Because our review is limited to the specific issue certified in the question of law on appeal, we decline to review the broader issue argued in Larsen's appellate brief. See State v. Day, 263 S.W.3d 891, 900 (Tenn. 2008) ("As we have stated repeatedly, no issue beyond the scope of the certified question will be considered."); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988) ("[T]he question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved."). As the Tennessee Supreme Court stressed, "Preston puts the burden of reserving, articulating, and identifying the issue upon the defendant." State v. Pendergrass, 937 S.W.2d 834, 838 (Tenn. 1996).

With regard to his certified question, Larsen argues that his pretrial detention did not serve a remedial purpose. Specifically, he claims that his pretrial detention did not serve the remedial purpose of detoxification because his detention took place seventeen days after he allegedly committed the offense and did not serve the remedial purpose of assuring his presence at trial because the policy, which imposes confinement and a minimum bond of $1000 for individuals charged with DUI, violates the Bail Reform Act requiring that "[b]ail be set as low as the court determines is necessary to reasonably assure the appearance of the defendant as required." T.C.A. § 40-11-118(a) (2006). Larsen also argues that the policy

-5-

of setting a minimum $1000 bond in all DUI cases is unconstitutional pursuant to article I, section 16 of the Tennessee Constitution.

Although the State concedes that the certified question of law is dispositive of the case, it argues that the certified question must be decided in the State's favor. Moreover, the State argues that although Larsen attempts to challenge the statutory validity and constitutionality of the general sessions court's policy regarding the minimum $1000 bond in all DUI cases, these issues were not included in the statement of his certified question and, consequently, were not properly certified under Tennessee Rule of Criminal Procedure 37. We agree with the State.

Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a conditional plea of guilty or nolo contendere if the defendant reserves, with the consent of the state and the court, the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

> (i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A) (amended July 1, 2011).

The Fifth Amendment of the United States Constitution, which is applicable to the states through the Fourteenth Amendment, states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." Moreover, article I, section 10 of the Tennessee Constitution states that "no person shall, for the same offence, be twice put in jeopardy of life or limb." In State v. Pennington, the Tennessee Supreme Court outlined the circumstances upon which double jeopardy violations occur:

> In context, double jeopardy violations arise only when an individual is twice placed in jeopardy for the same offense. Customarily, in jury

> proceedings, jeopardy attaches when the jury is sworn, and in nonjury proceedings, jeopardy attaches when the first witness testifies. Crist v. Bretz, 437 U.S. 28, 35, 98 S. Ct. 2156, 2160, 57 L. Ed. 2d 24 (1978); Serfass v. United States, 420 U.S. 377, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). A defendant must be put in jeopardy at least once, "for only if that point has once been reached does any subsequent prosecution of the defendant bring the guarantee against double jeopardy even potentially into play." Crist, 437 U.S. at 32-33, 98 S. Ct. at 2159.

952 S.W.2d 420, 422 (Tenn. 1997). The court also emphasized that jeopardy does not attach in pretrial proceedings:

> It is well established that jeopardy does not attach in preliminary pretrial proceedings. See United States ex rel. Rutz v. Levy, 268 U.S. 390, 45 S. Ct. 516, 69 L. Ed. 1010 (1925); Collins v. Loisel, 262 U.S. 426, 43 S. Ct. 618, 67 L. Ed. 1062 (1923). Rather, to be put in jeopardy, the defendant must be "subject to 'criminal prosecution' and put to trial." United States v. Grisanti, 4 F.3d 173, 175 (2nd Cir. 1993). The proceeding must be "essentially criminal" and constitute an action "intended to authorize criminal punishment to vindicate public justice." Id. (citing Breed v. Jones, 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L. Ed. 2d 346 (1975), and United States ex rel. Marcus v. Hess, 317 U.S. 537, 548-49, 63 S. Ct. 379, 386, 87 L. Ed. 443 (1943)).

Id.

Pursuant to his certified question of law, Larsen argues that the trial court erred in denying the motion to dismiss the indictment because his pretrial detention was punitive rather than remedial. Detention that is remedial, rather than punitive, does not implicate the Double Jeopardy Clause. Id. at 422-23; State v. Coolidge, 915 S.W.2d 820, 823 (Tenn. Crim. App. 1995) (stating that "if the state action is remedial and not intended to inflict punishment as a means of vindicating public justice, the double jeopardy clause serves as no protection"), overruled on other grounds by State v. Troutman, 979 S.W.2d 271 (Tenn. 1998). Moreover, "[p]re-trial detention in order to 'assure a defendant's presence at trial' is a legitimate remedial purpose." State v. Johnson, 980 S.W.2d 414, 420-21 (Tenn. Crim. App. 1998) (citing Coolidge, 915 S.W.2d at 823).

In Doe v. Norris, the Tennessee Supreme Court established some guidelines for determining whether confinement is punishment:

> In determining whether the confinement involved . . . is punishment, this Court must decide whether the confinement is imposed for the purpose of

punishment or whether it is an incident of a legitimate governmental purpose. Bell v. Wolfish, supra, 441 U.S. [520,] 538, 99 S. Ct. [1861,] 1873 [(1979)]. Where, as here, no showing of an express intent to punish is made, "that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" Id., 99 S. Ct. at 1874 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S. Ct. 554, 567-568, 9 L. Ed. 2d 644 (1963)).

751 S.W.2d 834, 839 (Tenn. 1988). Because the defendant has the burden of proving there was a double jeopardy violation, "the defendant must make an arguable showing that his pretrial detention qualified as punishment." Coolidge, 915 S.W.2d at 823-24; State v. James E. Irwin, No. 01C01-9603-CC-00096, 1997 WL 137427, at *2 (Tenn. Crim. App., at Nashville, Mar. 27, 1997), perm. app. denied (Tenn. Nov. 24, 1997).

Here, Larsen's detention resulted from a pretrial bond proceeding; accordingly, jeopardy did not attach at the time of his detention. See Pennington, 952 S.W.2d at 422 (citing U.S. ex rel. Rutz, 268 U.S. at 393; Collins, 262 U.S. at 429). We simply cannot conclude that Larsen's twenty-four-hour detention, which followed the immediate setting of his $1000 bond after he was taken into custody, was an "essential criminal" proceeding "intended to authorize criminal punishment to vindicate public justice." Id. (citing Breed, 421 U.S. at 528; U.S. ex rel. Marcus, 317 U.S. at 548-49). Moreover, Larsen is not entitled to relief under the standard established in Doe v. Norris, 751 S.W.2d at 839.

Because there was no showing of an express intent to punish, we must consider the following in determining whether Larsen's detention is punishment: (1) whether the pretrial detention served an alternative purpose, and if so, (2) whether the pretrial detention was excessive in relation to the alternative purpose. Id. First, we conclude that Larsen's detention served the alternative purpose of assuring his presence in court proceedings in his case. See Johnson, 980 S.W.2d at 420-21 ("Pre-trial detention in order to 'assure a defendant's presence at trial' is a legitimate remedial purpose."). Second, we conclude that Larsen's detention was not excessive in relation to this alternative purpose. Upon review, Larsen failed to make an arguable showing that his pretrial detention qualified as punishment. See Coolidge, 915 S.W.2d at 823-24. Accordingly, we affirm the trial court's denial of Larsen's motion to dismiss the indictment.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE